UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-61046-CIV-MARRA

JOHN EDWARD POPE, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.

EZ CARD & KIOSK LLC (a division of
GENERAL PAYMENT SYSTEMS, INC.); and
THE CENTRAL BANK OF KANSAS CITY,

      Defendants.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Central Bank of Kansas City's Motion to

Compel Arbitration and Stay or Dismiss Proceedings (DE 21).[1]  The Motion is fully briefed and

ripe for review.  The Court has carefully considered the Motion and is otherwise fully advised in

the premises.

I.  Background

John Edward Pope ("Plaintiff" "Pope") filed a class action Complaint against Defendants

EZ Card & Kiosk, LLC ("EZ Card") and Central Bank of Kansas City ("Central Bank")

(collectively, "Defendants") for a violation of the Electronic Funds Transfer Act, 15 U.S.C. §

1693 et seq. (count one), a violation of the Florida Deceptive and Unfair Trade Practices Act,

Florida Statute § 501.201 et seq. (count two), conversion (count three) and unjust enrichment

(count four).  The Complaint alleges the following:

Plaintiff was arrested by the Fort Lauderdale police in November of 2014 and was jailed

---

[1] Defendant EZ Card & Kiosk, LLC filed a Notice of Joinder of the motion. (DE 31.)

overnight.  When booked, the Broward County Jail (the "Jail")  confiscated $178 in cash from Plaintiff.  Plaintiff was released 17 hours later.   When released, the Jail did not return Plaintiff's cash, but gave him a prepaid debit card issued by EZ Card and the Bank of Kansas City. (Compl. ¶ 1.)  The Jail did not give Plaintiff the option of receiving his cash back and the prepaid card required Plaintiff to pay EZ Card and the Bank of Kansas City to access his own money. (Compl. ¶ 2.)  Defendants required Plaintiff to "pay various exorbitant, unreasonable fees to retrieve the money" taken from him. (Compl. ¶ 4.)  Plaintiff used the card to purchase food and other items. (Compl. ¶ 39.)

When Plaintiff was released from custody, the debit card he received had a balance of approximately $128, which was based upon the $178 cash that the Jail confiscated from him the day he was arrested, minus the cost of the bond, the booking fee, the uniform fee and the daily subsistence fee that the Jail charged him. (Compl. ¶ 34.)  Released individuals have no choice but to accept the EZ Card debit card in lieu of cash or check.  These individuals do not voluntarily engage with the company, enroll in the program or take any affirmative steps to form a contractual relationship with either Defendant.  (Compl. ¶ 22.)  Plaintiff did not assent to receiving the card over cash and never assented to any terms of contract with Defendants. (Compl. ¶ 35.)  The fees applicable to Plaintiff's debit card included: (1) a monthly maintenance charge of $4.95; (2) an ATM balance inquiry fee of $1.99; (3) an ATM withdrawal fee of $2.99; (4) a point of sale fee of $0.99; (5) a card replacement fee of $5.95 and (6) a fee of $4.00 to receive a paper statement. (Compl. ¶ 37.)

Defendant Central Bank has submitted a declaration by Trent Sorbe, the president of the Central Payment Division of Central Bank of Kansas City. (Sorbe Decl. ¶ 1, DE 22.) The

cardholder agreement states that "[b]y retaining and using the Card, you agree to be bound by the terms and conditions contained in this Agreement. (Cardholder Agreement, Ex. A, Sorbe Decl., DE 22.)  A similar provision appears on the back of the debit card issued by Central Bank. (Ex. B, Sorbe Decl. DE 22.)

At the top of the cardholder agreement is a statement reading "THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION," which directs the cardholder to the arbitration provision. (Cardholder Agreement.)  The arbitration provision defines an arbitrable claim as:

> any claim, dispute or controversy between you and use arising from or relating to the Card or Agreement . . . including the validity, enforceability or scope of this Arbitration Provision or the Agreements.  "Claim" includes claims of every kind and nature, including but not limited to initial claims, counterclaim, cross-claims and third-party claims and clams based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity.  The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, without limitation, any claim, dispute or controversy that arises from or relates to (i) your Card; (ii) the amount of available funds in your Card account; (iii) advertisements, promotions or oral or written statements related to your Card, goods or services purchased with your Card; (iv) the benefits and services related to your Card; and (v) your enrollment for any Card.

(Cardholder Agreement § E.4(c)).

The Cardholder Agreement provides that any claims "shall be referred to either the Judicial Administration and Mediation Services ("JAMS") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitraiton."  (Id. at § E.4(c).)   The Agreement gives the cardholder the opportunity to opt-out of arbitration as well as the ability to avoid arbitration by filing in small claims court.  (Id. at § § E.4(b) and (c).)

The Agreement gives the cardholder the option to cancel the debit card and receive a check refund for the balance.  The Cardholder Agreement provides:

<u>Amendment, Cancellation and Expiration</u>

. . . . You may cancel this Agreement by returning the Card to us.  Your termination of this Agreement will not affect any of our rights or your obligations arising under this Agreement prior to termination.
In the event that your Card Account is cancelled, closed, or terminated for any reason, you may request the unused balance to be returned to you via a check to the mailing address we have in our records.  There may be a fee for this service.  See Section A(3) (Fee Schedule) of this Agreement for more information regarding fees. . . .

(Cardholder Agreement § E.2.)

The fee schedule in the Cardholder Agreement reflects no charge to the customer if the account is closed and a check is issued at the customer's request. (<u>Id.</u> at § A.3.)

Plaintiff states he was not given an opportunity to reject the debit card or receive his money back in the form of cash or check.  (Pl. Decl. ¶ 8, DE 35.)  He does not recall receiving a Cardholder Agreement or terms or conditions with the debit card.  (<u>Id.</u> at ¶ 9.)  No one talked to him about the Cardholder Agreement or the terms and conditions of the debit card and he never agreed to arbitrate claims against Defendants. (<u>Id.</u> at ¶ 12.)

Defendants have submitted records from the Jail which indicate that Plaintiff signed a Withdrawal Receipt and Inmate Bank Account Refund Options form and elected to received funds remaining on his Jail account via debit card. (Emanauel McCray Decl. ¶ 6, DE 39.)  The refund options form provided to Plaintiff provided two options: Option one provided for repayment by debit card and identified specific fees associated with that card.  Option two provided a refund in the form of a check.  (Refund option form, DE 39.)  Plaintiff selected the "debit card" option. (<u>Id.</u>)  It is the Jail's policy and procedure to provide all inmates who elect a debit card in lieu of a check with copies of the Withdrawal Receipt, Inmate Bank Account Refund Options form and the EZ Exit Release Card Cardholder Agreement. (McCray Decl. ¶ 5.)

4

In reply, Plaintiff submitted another declaration. (Pl. Sec. Decl., DE 45-1.)  At the time of

Plaintiff's arrest, he did not have a bank account, debit card or credit card.  (Id. at ¶ ¶ 5-7.)  Other

than the $178.00 in cash that the Jail confiscated, he had no other money. (Id. at ¶ 8.)  Had he left

the Jail without the debit card, Plaintiff would have had no access to money until he received a

check.  (Id. at ¶ 9.)  While he does not recall signing the Withdrawal Receipt or the Inmate Bank

Account Refund Options form, he does not challenge the authenticity of his signature.  (Id. at ¶

11.)

Defendants move to compel arbitration on the basis of Plaintiff's acceptance and use of

the debit card.  Plaintiff responds that there was no mutual assent or consideration between him

and Defendants.  Plaintiff also claims issues of fact preclude any finding that Plaintiff agreed to

arbitrate as a matter of law.  In reply, Defendants point out that Plaintiff agreed to the terms and

conditions of the Cardholder Agreement when he voluntarily elected to receive repayment

through the issuance and use of the debit card and therefore the agreement was supported by

consideration.  In his sur-reply, Plaintiff argues that he was not offered a genuine alternative to

the debit card and his receipt of the Cardholder Agreement does not settle issues of fact.

II. Discussion

The Supreme Court has articulated a strong federal policy favoring arbitration

agreements. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

One of the purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., is to "ensure

judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v.

Byrd, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be "rigorously enforce[d]"

by the courts. Id. at 221.  Because arbitration is a matter of contract, however, the FAA's strong

pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate.

Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "[A] party plainly cannot

be bound by an arbitration clause to which it does not consent."  BG Grp., PLC v. Republic of

Argentina, — U.S. —, 134 S. Ct. 1198, 1213 (2014) (Sotomayor, J. concurring).

       For the purposes of a motion to compel arbitration, the Court may consider affidavits.

See Samadi v. MBNA America Bank, N.A., 178 Fed. App'x 863, 866 (11th Cir. 2006). In fact,

the party opposing a motion to compel arbitration has an affirmative duty of coming forward

with affidavits or deposition transcripts to show that the court should not compel arbitration.  See

Sims v. Clarendon Ins. Co., 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004).  Federal substantive

law of arbitrability determines which disputes are within the scope of the arbitration clause.

Lawson v. Life of the South Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011).

       Here, the Court finds that Plaintiff consented to arbitration.  The Jail gave him an option

to receive a check, but Plaintiff elected to take the debit card instead.  Plaintiff signed a form

which provided him with a choice of his refund options.  That form noted the fees associated

with the debit card and the option to receive instead a check, minus postage, from the Jail.  Upon

choosing the debit card, the Jail's procedure is to give individuals, such as Plaintiff, the

Cardholder Agreement which provided him with the option to receive his money via check as

well.  Plaintiff used the card to purchase food and other items.  Based on these facts, Plaintiff is

bound by the Cardholder Agreement and any claims he wishes to pursue are subject to

arbitration.  See Krutchik v. Chase Bank USA, N.A., 531 F. Supp. 2d 1359, 1364-65 (S.D. Fla.

2008) (the "[p]laintiff failed to follow the specified procedure for rejecting the [ ] terms and

continued using the credit card, his actions constitute a legal acceptance of the terms contained within the cardmember agreement, including the arbitration provision, and the agreement is binding").

In arguing that he did not agree to arbitration, Plaintiff relies upon Regan v. Stored Value Cards, Inc., No. 1:14-CV-01187-AT, 2015 WL 570524 (N.D. Ga. Jan. 13, 2015). The facts of that case differ significantly. When the plaintiff in Regan was released the day after his arrest, he was given a prepaid card and was not given an opportunity to reject the card. Id. at * 4. He was not given a cardholder agreement before being given the card, was not told the cardholder agreement was in his discharge paperwork and he did not sign the cardholder agreement. Id. Given that Plaintiff chose the debit card over a check, Regan is inapposite.[2]

Plaintiff also contends that the Jail did not offer him a "genuine alternative" to the debit card. Plaintiff states that the confiscated money represented all the money he had in the world and waiting for a check to arrive in the mail was not an option. The Court finds, however, that Plaintiff made a choice based upon his particular circumstances. These individual circumstances do not render Plaintiff's decision to accept the debit card, with its terms and conditions, including arbitration, coerced or unconscionable.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to

---

[2] Likewise, Plaintiff's contention that the agreement was not supported by consideration is equally unpersuasive. Plaintiff received the benefit of a debit card over a check, which gave Plaintiff immediate access to the funds. See Real Estate World Florida Commercial, Inc. v. Piemat, Inc., 920 So. 2d 704, 706 (Fla. Dist. Ct. App. 2006) ("the consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee.")

Compel Arbitration and Stay or Dismiss Proceedings (DE 21) is **GRANTED**.  The case shall be stayed pending completion of the arbitration and the clerk shall administratively close the case. All pending motions are denied as moot.

       **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of September, 2015.

 

KENNETH A. MARRA
United States District Judge